UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| KAREN JANKOWSKI | : |
| | : |
| v. | :    C.A. No. 05-378A |
| | : |
| JO ANNE B. BARNHART, | : |
| Commissioner, Social Security | : |
| Administration | : |

**MEMORANDUM AND ORDER**

This matter is before the Court for judicial review of a final decision of the Commissioner

of the Social Security Administration ("Commissioner") denying Disability Insurance Benefits

("DIB") under the Social Security Act ("Act"), 42 U.S.C. § 405(g). Plaintiff filed her Complaint on

August 31, 2005 seeking to reverse the decision of the Commissioner or, in the alternative, to

remand for further proceedings. Plaintiff filed a Motion for Summary Judgment on January 30,

2006. The Commissioner filed a Motion to Affirm her decision on March 29, 2006.

With the consent of the parties, this case has been referred to me for all further proceedings

and the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. Based upon

my review of the entire record, independent legal research, and the legal memoranda filed by the

parties, I find that there is not substantial evidence in the record to support the Commissioner's

decision and findings that Plaintiff is not disabled within the meaning of the Act. Consequently, I

order that the Commissioner's Motion to Affirm (Document No. 10) be DENIED and that Plaintiff's

Motion for Summary Judgment (Document No. 7) be GRANTED and the matter remanded for

further proceedings as discussed herein.

## I.    PROCEDURAL HISTORY

Plaintiff filed an application for DIB on December 5, 2002, alleging that she had been disabled since July 15, 2001. (Tr. 51-53, 59). The application was denied initially and on reconsideration. (Tr. 25-27, 29-31). On September 16, 2004, a hearing was held before Administrative Law Judge Barry H. Best (the "ALJ"). (Tr. 230-259). After hearing and consideration of the testimony of Plaintiff, who was represented by counsel, and a vocational expert, the ALJ decided that Plaintiff was not entitled to a period of disability or DIB because she was capable of performing other work which exists in significant numbers in the national economy and was therefore not disabled as defined by the Social Security Act. (Tr. 14-22, 22 at Finding 11). The Appeals Council denied Plaintiff's request for review on June 30, 2005, thus making the ALJ's January 13, 2005 decision the final decision of the Commissioner. (Tr. 4-6). A timely appeal was then filed with this Court.

## II.    THE PARTIES' POSITIONS

Plaintiff argues that the ALJ failed to afford proper weight to the opinions of the consultative psychological examiners and her treating social worker and, as a result, the ALJ's residual functional capacity findings are not supported by substantial evidence. Plaintiff contends that the ALJ's reasons for discounting the opinions of these sources were erroneous and that such opinions demonstrate that her mental impairments render her unable to work.

The Commissioner disputes Plaintiff's claims and argues that a review of the ALJ's decision and the evidence of record demonstrates that the ALJ, in accordance with regulation and Agency policy, appropriately afforded little weight to the opinions of the consultative psychological examiners and to Plaintiff's social worker, and no errors exist on these grounds and that there is

substantial evidence in the record as a whole to support his decision that Plaintiff is not entitled to disability benefits.

### III.    THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Ortiz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence

establishes without any doubt that the claimant was disabled. Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. Seavey, 276 F.3d at 8. To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence four remand may be appropriate to allow her to explain the basis for her decision. Freeman v. Barnhart, 274 F.3d 606, 609-10 (1st Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council). After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction. Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a

reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level. See Jackson v. Chater, 99 F.3d 1086, 1090-92 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant. Jackson, 99 F.3d at 1095. With a sentence six remand, the parties must return to the court after remand to file modified findings of fact. Id. The court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings. Id.

## IV.    DISABILITY DETERMINATION

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A.    Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may

discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-76 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R § 404.1527(d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. See 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's RFC (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner. 20 C.F.R. § 404.1527(e). See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

## B.    Developing the Record

The ALJ has a duty to fully and fairly develop the record.    Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991). The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained. See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 142 (1st Cir. 1987). The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel. Id. However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty. See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

## C.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986). In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision. Carrillo Marin v. Sec'y of Health and Human Servs., 758 F.2d 14, 17 (1st Cir. 1985).

## D.    The Five-step Evaluation

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not

disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her RFC, age, education and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five. Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act. Seavey, 276 F.3d at 5. The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits. Deblois v. Sec'y of Health and Human Servs., 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(i)(3), 423(a), (c). If a claimant

becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability. Id.

### E.    Other Work

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. Seavey, 276 F.3d at 5. In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids"). Seavey, 276 F.3d at 5. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. Id.; see also Heckler v. Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills. Nguyen, 172 F.3d at 36. In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. Heggarty, 947 F.2d at 996. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981). In any event, the ALJ must make a specific finding as to whether the non-

exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

### 1.    Pain

"Pain can constitute a significant non-exertional impairment." Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

> (1) The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
>
> (2) Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
>
> (3) Type, dosage, effectiveness, and adverse side-effects of any pain medication;
>
> (4) Treatment, other than medication, for relief of pain;
>
> (5) Functional restrictions; and
>
> (6) The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1ˢᵗ Cir. 1986). An individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

### 2. Credibility

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Rohrberg, 26 F. Supp. 2d at 309. A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. See Frustaglia, 829 F.2d at 195. The failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1ˢᵗ Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11ᵗʰ Cir. 1982). If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1562 (11ᵗʰ Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11ᵗʰ Cir. 1983)).

### V. APPLICATION AND ANALYSIS

Plaintiff was thirty-one years old at the time of the hearing. (Tr. 95). She has a high school education and attended one year of college. (Tr. 65, 236). Plaintiff previously worked as a secretary, bank teller and cake decorator/clerk in an ice cream store. (Tr. 60, 95, 236, 251-252). Plaintiff testified that she is unable to work because she cannot concentrate and she has memory difficulties. (Tr. 238). Plaintiff testified at the hearing that she stopped working in July 2001 because of her

anxiety and depression. (Tr. 60, 236). Plaintiff stated that she became overwhelmed by household chores (Tr. 237), had difficulty with concentration and memory (Tr. 238, 247), avoided people (Tr. 246), cried, experienced difficulty getting out of bed and getting dressed and occasionally felt suicidal. (Tr. 247-248). Plaintiff testified that she needed frequent help from her mother and mother-in-law with housework and child care. (Tr. 241). At the ALJ hearing, Plaintiff's counsel contended that the basis of the disability claim is "primarily psychiatric." (Tr. 233). Although Plaintiff asserts no exertional limitations, it is undisputed that she had suffered a significant bilateral hearing loss (greater in the left ear) which is claimed to be both a non-exertional limitation by itself and a contributing factor to Plaintiff's mental impairments.

On March 28, 2000, Plaintiff presented to her primary care physician, Dr. Usha Paneerselvam, complaining of intermittent sharp pain in both ears of mild to moderate intensity. (Tr. 164). Dr. Paneerselvam diagnosed ear pain due to a viral infection. Plaintiff was referred to Dr. Steven Rauch at the Massachusetts Eye and Ear Infirmary and an audiologic evaluation was performed on April 24, 2000. (Tr. 190). The audiogram demonstrated that Plaintiff had normal bilateral middle ear functioning, but her hearing in her right ear had decreased in the lower frequencies in comparison to her previous audiogram in October 1998. The hearing in her left ear had slightly decreased. Asymmetry was noted for speech and pure tones, left ear worse than right, and it was suggested that Plaintiff might have communication difficulties in adverse listening situations, though amplification was not recommended. A repeat audiogram on May 1, 2000, demonstrated that Plaintiff's hearing had improved bilaterally. (Tr. 192). A May 3, 2000 audiogram showed that Plaintiff's right ear hearing had decreased at 500 Hz when compared to the May 1, 2000 test, but it was noted that Plaintiff's hearing had remained stable bilaterally and that amplification

was still not a recommendation. (Tr. 195). Subsequent audiograms on May 5, 2000 and June 6, 2000 also showed that Plaintiff's hearing was stable bilaterally and that there would be "minimal benefit" from amplification. (Tr. 198, 204). A note dated August 8, 2000 by Dr. Paneerselvam indicates that Plaintiff did not have any complaints, and her ear symptoms were unchanged. (Tr. 164).

On November 16, 2000, Plaintiff informed Dr. Paneerselvam that she was feeling "very depressed about her right ear hearing loss" and that she wanted to try an anti-depressant, which Dr. Paneerselvam prescribed. (Tr. 165). At a follow-up visit one month later, Plaintiff stated that she felt the medication was helpful and that she had less anxiety. Dr. Paneerselvam noted that Plaintiff was cheerful and talkative and diagnosed anxiety and depression improved. (Tr. 165).

The next medical note of record was made by Dr. Paneerselvam one year later on December 10, 2001. (Tr. 166). Plaintiff complained of nervousness and depression symptoms, stating that she had stopped taking the anti-depressant because she was pregnant. Dr. Paneerselvam provided Plaintiff with a prescription for an anti-depressant. At her visit on December 20, 2002, Dr. Paneerselvam noted that Plaintiff was comfortable, she was in counseling and she had no other complaints. (Tr. 166).

Plaintiff returned to the Audiology Department at Massachusetts Eye and Ear Infirmary on September 16, 2002, for an audiogram, complaining of aural fullness bilaterally and a recent decrease in hearing in her right ear. (Tr. 209). The audiogram revealed that Plaintiff's hearing sensitivity had decreased in the right ear and remained stable in the left ear in comparison to her previous audiogram. It was noted that communication difficulties were not anticipated. Subsequent audiograms performed on September 27, 2002, October 22, 2002, and December 10, 2002 showed

-13-

that Plaintiff's hearing sensitivity remained stable bilaterally and communication difficulties in adverse listening situations were anticipated, though amplification was not recommended. (Tr. 210, 213, 215).

In a notation dated January 8, 2003, Dr. Paneerselvam wrote that she first examined Plaintiff in August 1999 and that she saw Plaintiff on a yearly basis. (Tr. 144). Dr. Paneerselvam indicated that Plaintiff's anxiety symptoms were exacerbated the prior month, in December 2002, but that she was currently stable on anti-depressant medication. (Tr. 144). On October 2, 2003, Dr. Paneerselvam completed a questionnaire in which she stated that Plaintiff's anxiety and depression were moderately severe, and it was her opinion that Plaintiff could not sustain competitive employment on a full-time basis. (Tr. 145-146).

Plaintiff underwent a consultative psychiatric examination on February 12, 2003, by Dr. William LaFrance, Jr. (Tr. 94-97). Plaintiff relayed that she was diagnosed with depression in 1999 and an anxiety disorder in 2000, but she was not currently receiving treatment from a psychiatrist or psychologist. (Tr. 94). Plaintiff reported feelings of worthlessness, hopelessness and helplessness. She stated that she had her most recent panic attack three weeks prior and that she experienced tremors in her hands frequently. Plaintiff told Dr. LaFrance that she felt more edgy and irritable, but that her general anxiety was under control. Dr. LaFrance noted Plaintiff's statement that she was able to perform all of her activities of daily living, including paying bills, though she also reported trouble focusing and maintaining attention for the past year. (Tr. 96). Plaintiff informed that she had a good relationship with her daughters. Plaintiff further stated that she felt overwhelmed performing household tasks, but she later said that she did things around the house during the day. (Tr. 96).

-14-

On examination, Dr. LaFrance noted that Plaintiff was polite and cooperative, though her affect was depressed. (Tr. 96). Plaintiff displayed no motoric abnormalities, and her speech was of normal rate, rhythm and volume. Her thought processes were linear and logical and her thought content revealed no perceptual abnormalities, though her judgment and insight were limited. Dr. LaFrance remarked that Plaintiff was alert and oriented to person, place, time and situation; she registered three objects immediately; she recalled all three objects after five minutes; she performed serial sevens; and she was able to recall recent presidents. Dr. LaFrance indicated that Plaintiff was of average intelligence, she had an average fund of knowledge and she was able to abstract in her comparisons. Dr. LaFrance diagnosed panic disorder with agoraphobia, major depressive disorder, moderate, and dysthymic disorder. He opined that Plaintiff's condition would worsen in the absence of marital and/or family therapy, but that if she obtained help with her marital issues and had psychiatric follow-up, she had a fair to good prognosis of reintegrating societally. (Tr. 97). Dr. LaFrance concluded that Plaintiff's GAF (Global Assessment of Functioning) score was 45 which indicates "[s]erious symptoms...[or] serious impairment in social, occupational, or school functioning," such as inability to keep a job. See, e.g., Langley v. Barnhart, 373 F.3d 1116, 1122 n.3 (10th Cir. 2004).

At the request of her attorney, Plaintiff was evaluated by Dr. James K. Sullivan, a psychiatrist, on August 8, 2003. (Tr. 137-141). Dr. Sullivan indicated that Plaintiff "describe[d] and demonstrate[d]" symptoms consistent with major depressive disorder, generalized anxiety disorder and panic attacks and that her internist, Dr. Paneerselvam, was treating her for these conditions. (Tr. 137-138). Plaintiff "endorse[d]" symptoms of depression and anxiety, including poor concentration, poor task persistence, sadness, irritability, restlessness and hypervigilance. (Tr. 140). She stated that

-15-

she had experienced panic attacks, manifesting as dizziness, shortness of breath and chest pain. Plaintiff informed Dr. Sullivan that "one factor contributing to her symptoms of depression, anxiety and panic pertain[s] to the fact that...she experienced a total hearing loss in her left ear" in 1998 and that on a daily basis, she is frightened and devastated at the thought of losing her hearing completely. (Tr. 139). She stated that she had experienced a decrease in concentration, memory and task persistence as a result of her depression but later informed that she was able to complete household chores and needs without difficulty and that she "devotes all of her energy and responsibilities to the care of her two young children." (Tr. 139-141).

Upon examination, Plaintiff was polite and cooperative and although she appeared anxious, Plaintiff was able to complete the evaluation. (Tr. 140). Dr. Sullivan noted that Plaintiff's memory and cognition were grossly intact. (Tr. 141). Dr. Sullivan diagnosed major depressive disorder, generalized anxiety disorder and a history of panic attacks. He proffered that as a result of her symptoms, Plaintiff was unable to maintain full-time work, and he encouraged her to "continue her medical treatment." (Tr. 141). Dr. Sullivan completed a residual functional capacity questionnaire in which he suggested that Plaintiff had mild limitations in her ability to perform simple tasks; moderate limitations in her ability to perform repetitive tasks, relate to other people and respond appropriately to supervision and co-workers; and, moderately severe limitations in her ability to perform her activities of daily living, understand and carry out instructions, respond to customary work pressures, perform complex tasks and perform varied tasks. (Tr. 142-143).

Plaintiff presented to Cynthia P. Wilcox, LICSW, on August 5, 2003, and the record reveals that Plaintiff met with Ms. Wilcox approximately once per week through October 2004. (Tr. 150, 217-228). At her initial visit, Plaintiff relayed that she lost one-half of her hearing in one ear and

-16-

experienced a partial loss of hearing in the other ear in 1998 due to a virus and that she was depressed as a result. (Tr. 147, 217). Ms. Wilcox noted that Plaintiff was "devastated" by her hearing loss and that it had totally changed her life, explaining that Plaintiff quit her job because of her hearing loss and that she had developed a fear of driving and being too far from home because she was afraid she wold not hear something. (Tr. 147, 218). Ms. Wilcox noted that Dr. Paneerselvam had prescribed an anti-depressant and an anti-anxiety medication for Plaintiff for the past year. (Tr. 217).

At subsequent meetings, Plaintiff relayed that she does not work, but she drives and she is able to shop for groceries and get her dinner. (Tr. 219). She frequently discussed her hearing difficulty, stating that she developed obsessive compulsive behavior after her hearing loss, she is reluctant to speak in a group out of fear she will not hear a person's response, she avoids people because of her hearing loss and she is more irritable because her hearing loss is always on her mind. (Tr. 220, 222-223, 225). In June 2004, Ms. Wilcox noted that Plaintiff was trying to be outside more often and that she tried to discuss returning to work. (Tr. 226). In a letter to Plaintiff's attorney dated June 3, 2004, Ms. Wilcox opined that Plaintiff was unable to return to work due to her depression and anxiety. (Tr. 147, 151). Ms. Wilcox suggested that Plaintiff's symptoms were severe. (Tr. 150).

On referral by her attorney, Plaintiff underwent a psychological examination by John Parsons, Ph.D., on August 16, 2004. (Tr. 152-159). Plaintiff reported that she had never had a psychiatric hospitalization and that she had outpatient psychotherapy with Ms. Wilcox, who, she stated, helped her with her anxiety and depression. (Tr. 155). Plaintiff added that she was sensitive about her

-17-

hearing loss. (Tr. 155). Plaintiff also described symptoms of depression and stated that she had anxiety and agoraphobia. (Tr. 157).

Upon examination, Dr. Parsons observed that Plaintiff was alert and responsive and her work tempo was average, but her attention and concentration spans were moderately impaired. (Tr. 153, 156-157). She was cooperative, though moderately distressed, and exhibited appropriate eye contact. (Tr. 153, 156). Dr. Parsons remarked that Plaintiff's speech was emotional, but intelligible, and she had a fair sense of humor. (Tr. 153). Plaintiff's affect varied appropriately for the content of the discussion and her recall for specifics was appropriate. (Tr. 153, 157). Plaintiff was oriented to person, place and time, and she appeared capable of functioning within the average range of general intelligence. (Tr. 157). There was no cognitive loss, her fund of information was consistent with her background and her ability to deal with abstractions for higher levels of reasoning were within normal limits. (Tr. 157).

Dr. Parsons diagnosed major depressive disorder, severe, recurrent, with psychotic features; panic disorder with agoraphobia; and, relational problems. (Tr. 158). He recommended continued psychotherapy, and he stated that her prognosis was fair. Dr. Parsons theorized that Plaintiff's depression and anxiety would make it difficult for her to maintain gainful employment. He indicated that Plaintiff had problems attending, concentrating and focusing and that she was indecisive. (Tr. 158-159). Dr. Parsons added that Plaintiff was uncomfortable around people and had a pattern of experiences and behaviors that interfere with the appropriateness of her emotional responses and personal function. (Tr. 159). On a questionnaire regarding Plaintiff's functional capacity, Dr. Parsons suggested that Plaintiff had moderately severe limitations in her ability to relate to other people; engage in daily activities; understand and carry out instructions; respond appropriately to co-

-18-

workers; and, perform simple tasks. (Tr. 160-161). Dr. Parsons further opined that Plaintiff was severely limited in her ability to respond appropriately to supervision; respond to customary work pressures; perform complex tasks; perform repetitive tasks; and perform varied tasks. (Tr. 160-161).

A state agency medical consultant, Maryann Gnys, Ph.D., reviewed Plaintiff's medical records in July 2003. (Tr. 118-134). Based on her review of the record, including the notes made by Dr. Paneerselvam and Dr. LaFrance as well as Plaintiff's own statements, Dr. Gnys opined that Plaintiff had no restriction in her daily activities and moderate difficulties in maintaining social functioning and maintaining concentration, persistence and pace. (Tr. 128-129, 134). Dr. Gnys indicated that Plaintiff was capable of understanding and recalling information, as evidenced by Dr. LaFrance's examination, but her reported forgetfulness might interfere with her ability to perform complex tasks. (Tr. 134). Dr. Gnys noted that Plaintiff's depression and panic disorder would make it difficult to sustain prolonged concentration when symptomatic, but she was able to sustain focus for two-hour blocks over an eight-hour day. With regard to social interaction, Dr. Gnys remarked that Plaintiff had no history of problems with co-workers or supervisors and that she socializes and gets along well with others, but her depression may cause her to be more isolative, resulting in difficulty accepting criticism from co-workers and supervisors. Dr. Gnys also indicated that Plaintiff could plan for simple tasks and adapt to routine changes, as demonstrated by her activities of daily living. (Tr. 134). Clifford Gordon, Ed.D, another state agency medical consultant, reviewed Plaintiff's medical records in May 2003 (Tr. 98-117) and reached similar conclusions to Dr. Gnys. Compare Tr. 108 with Tr. 128.

**A.    The ALJ's Failure to Adequately Consider All of the Medical Evidence of Record Warrants Remand for Further Review and Explanation**

Plaintiff argues that remand is warranted because the ALJ failed to give appropriate weight to the opinions of the consultative and treating sources and erred by ignoring a consultative psychiatric evaluation favorable to a finding of disability.  It is undisputed that Plaintiff has been diagnosed with depression and anxiety, and the ALJ found these conditions to be "severe" pursuant to 20 C.F.R. § 404.1520(c), although not of listing-level severity.  (Tr. 16, 21 at Findings 3 and 4).

With respect to Plaintiff's mental impairments, the record contains six primary pieces of evidence.  Two are reports from nonexamining state agency medical consultants (Dr. Gnys and Dr. Gordon) who reviewed Plaintiff's medical records.  (Exs. 2F and 3F).  Two are reports from examining professionals (Dr. Sullivan, a psychiatrist and Dr. Parsons a psychologist) who each met with Plaintiff once on referral by her attorney.  (Exs. 4F and 7F).  One is a report and records from a social worker (Ms. Cynthia Wilcox) who provided psychotherapy to Plaintiff starting in August 2003.  (Exs. 6F and 14F).  The final one is a state agency consultative report from a psychiatrist (Dr. LaFrance) who met with Plaintiff once in February 2003.  (Ex. 1F).

In his decision, the ALJ essentially found, for several articulated reasons, that the opinions favorable to Plaintiff of Dr. Sullivan, Dr. Parsons and Ms. Wilcox were not persuasive and that the opinion of Dr. Gnys was more consistent with the medical evidence and thus persuasive.  (Tr. 17-19).  The ALJ did not, however, discuss the opinion of Dr. LaFrance in his decision.  The Commissioner counters that the ALJ did consider Dr. LaFrance's evaluation because his report (Ex. 1F) is referenced "several times" in his decision.  Commissioner's Mem. of Law at p. 20 n.3.  Since several is technically defined as more than two, the Commissioner's assertion as to the ALJ's

-20-

references to Dr. LaFrance's evaluation is accurate since there are three citations to Exhibit 1F in the ALJ's decision. However, these three references do not necessarily demonstrate that the ALJ adequately considered Dr. LaFrance's evaluation.

While this Court agrees that "[a]n ALJ is not required to expressly refer to each document in the record, piece-by-piece," Rodriguez v. Sec'y of Health and Human Servs., 915 F.2d 1557, 1990 WL 152336, at *1 (1st Cir. 1990), Dr. LaFrance's report is more than an isolated document and appears to be a significant piece of medical evidence. It is an independent psychiatric mental status evaluation of Plaintiff done after an examination. Although the report offers no direct opinion on Plaintiff's ability to return to work, Dr. LaFrance concludes that Plaintiff suffers from panic disorder with agoraphobia; major depressive disorder, moderate; and dysthymic disorder. (Tr. 96). In addition, Dr. LaFrance diagnoses a GAF score of 45 which indicates serious symptoms or impairments and a possible inability to work. Although not determinative by itself, courts have held that "[a] GAF score of fifty or less...does suggest an inability to keep a job." Lee v. Barnhart, 117 Fed. Appx. 674, 2004 WL 2810224, at **3 (10th Cir. 2004) (citation omitted). Furthermore, Dr. LaFrance's GAF score of 45 is consistent with the GAF scores assessed by the retained professionals – Dr. Sullivan GAF 45-50 (Tr. 141) and Dr. Parsons GAF 48 (Tr. 158).

Under 20 C.F.R. § 404.1527(d), the ALJ is required to "evaluate every medical opinion...receive[d]." From his decision, it is impossible to determine if Dr. LaFrance's opinion was evaluated and, if so, the weight given to it. The three references to Dr. LaFrance's report in the ALJ's decision (Tr. 16-17) are each part of string cites in support of general statements about Plaintiff's symptoms and diagnosis. There is absolutely no specific discussion about Dr. LaFrance's opinion and GAF score of 45. Given the particular state of this record, the ALJ should have given

more substantive attention to Dr. LaFrance's report and, if warranted, sought additional evidence either in the form of clarification from Dr. LaFrance, an additional consultative examination or testimony from a medical expert to further develop the record. While the finding of no disability may ultimately remain unchanged, the ALJ's decision simply does not, at this time, provide an adequate basis for this Court to conclude that the finding of no disability is supported by substantial evidence.

## B.   Consideration of Plaintiff's Other Claimed Error is Not Necessary in View of this Court's Remand Order

Plaintiff's second and final claimed error is the ALJ's finding that her allegations regarding her limitations are "not  totally credible" is not supported by substantial evidence and did not comport with the Avery standard. In view of this Court's conclusion that the ALJ did not fully evaluate the medical evidence of record in his decision, it is somewhat premature for this Court to go further at this point. Although the ALJ's initial credibility determination appears supported by the record, the ALJ may choose to revisit that issue on remand depending upon how he ultimately weighs the opinion of Dr. LaFrance and any other additional medical evidence.

Plaintiff does, however, make one argument worthy of comment at this point. In his decision, the ALJ concluded that Plaintiff's "exaggerated description of her hearing loss in defining and supporting her psychological condition diminishes the[ ] ultimate conclusions" of Dr. Sulllivan and Dr. Parsons. (Tr. 17). In other words, the ALJ appears to reason that because Plaintiff's depression and anxiety stemmed primarily from her hearing loss, Plaintiff's mental impairment must be moderate because her hearing loss was moderate. While the ALJ's conclusion may be correct, he cites no medical basis in the record for this conclusion. It is undisputed that Plaintiff suffered a

sudden, irrevocable bilateral hearing loss in her late twenties, and there is evidence in the record that the hearing loss "devastated" Plaintiff. (Tr. 147). In addition, Dr. Paneerselvam noted in November 2000 that Plaintiff was "very depressed" (Tr. 165) about her hearing loss and she prescribed anti-depressant medications to Plaintiff. (Tr. 165-167). There does not appear to be any medical evidence of record to support the ALJ's conclusion that a severe or even moderately severe mental impairment could not arise out of a moderate hearing loss.

## VI.    CONCLUSION

For the reasons stated above, I order that the Commissioner's Motion to Affirm (Document No. 10) be DENIED and that the Plaintiff's Motion for Summary Judgment (Document No. 7) be GRANTED. Final Judgment shall enter in favor of the Plaintiff reversing the decision of the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) and remanding this matter for additional proceedings consistent with this opinion.

LINCOLN D. ALMOND
United States Magistrate Judge
April 17, 2006